The Powell Pressed Steel Company v. Commissioner.
Powell Pressed Steel Co. v. Commissioner
Docket No. 3824.
United States Tax Court
1945 Tax Ct. Memo LEXIS 212; 4 T.C.M. (CCH) 455; T.C.M. (RIA) 45153; May 1, 1945
*212 Warren E. Hacker, Esq., and Paul L. Holden, Esq., 185, Union Commerce Bldg., Cleveland, Ohio, for the petitioner. Lawrence P. Bloomenthal, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined deficiencies for the year 1941 as follows: Income Tax
$ 3,246.42
Declared Value Excess Profits Tax
3,185.07
Excess Profits Tax
10,472.43
The sole question presented arises from respondent's action in disallowing part of the salary paid to each of four of petitioner's officers. [The Facts] The facts are as follows: Petitioner is a corporation organized February 2, 1920, under the laws of the State of Ohio and is located at Hubbard, Ohio, engaged in the business of manufacturing and selling pressed and stamped steel products. Petitioner kept its books of account on an accrual method of accounting and made its returns on the calendar year basis. It was originally incorporated by W. J. Powell, H. S. Wylde and E. J. Powell. It was financed originally by the investment of the personal savings of the incorporators and by stock subscriptions of relatives and friends obtained by personal solicitation. *213 On October 5, 1928, petitioner's stockholders adopted a "regulation" which has been in effect at all times since that date, providing as follows: "The board of directors of the company, in addition to the other powers conferred upon it by these regulations and the laws of the State of Ohio, shall have the discretionary power and authority, at the end of any calendar year, to provide for the payment of a maximum amount as additional salaries or bonuses to be paid to the officers and employees of the company, and to further fix the amount to be paid out of such maximum amount to the president and general manager of the company, and to authorize the president and general manager to distribute the balance of such maximum amount to such officers and employees and in such amounts respectively as the president may determine. Such maximum amount so provided to be authorized by the said board of directors shall be authorized to be paid only out of the profits made for the year during which the board of directors may authorize such appropriation and to be fixed by said board of directors upon the basis of what the said board may fix or determine as a fair proportion of the net profits earned *214 by the company during the year for which said maximum amount of additional salaries or bonuses shall be so determined." At all times during the year 1941 W. J. Powell was president and general manager; H. S. Wylde was vice president and sales manager; E. J. Powell was secretary and engineer; and W. S. Davis was treasurer and general accountant of petitioner. The petitioner's board of directors in 1941 consisted of the above four officers and A. M. Henderson, A. J. Mayers, and E. C. Ernst, who were not related to the officers. Prior to November 25, 1941, the annual authorized compensation of petitioner's officers for the year 1941 was as follows: W. J. Powell
$15,000
H. S. Wylde
12,000
E. J. Powell
12,000
W. S. Davis
5,750 Petitioner paid the full amounts to these officers during the year 1941. On November 25, 1941, petitioner's board of directors, at its regular monthly meeting, duly authorized the payment of additional compensation in the aggregate amount of $25,000 to the petitioner's officers. Pursuant to the resolution. the petitioner during the year 1941 paid additional compensation to its officers as follows: W. J. Powell
$ 8,333.34
H. S. Wylde
6,666.66
E. J. Powell
6,666.66
W. S. Davis
3,333.34
Total
$25,000.00
*215 (This additional compensation was allowed by the respondent.) Prior to the November meeting of the board of directors, the executive committee decided that at least $50,000 from 1941 earnings should be left for surplus in order to restore to surplus $50,000, similar to that contemplated at the time petitioner was incorporated and which had been depleted in intervening lean years. At the regular monthly meeting of the board of directors held December 23, 1941, the payment of an additional $25,000 as compensation to the four officers was discussed, special consideration being given to the amount which could be paid and still leave $50,000 for distribution to the surplus account. At this meeting Henderson questioned the accuracy of the treasurer's estimates of Federal taxes to become due and insisted that advice of the company's auditor and certified public accountant be obtained before the tentative report was taken as accurate. On Henderson's motion, the directors resolved: "* * * that, after a survey had been made by the company treasurer and auditor of the net amount which would be distributable to the surplus account of the company, additional compensation should be paid to *216 those officers who had participated in the amount set aside for the same purpose by the directors at the November meeting, and that the amount thereof should be determined so as to provide not less than $50,000.00 for distribution to the surplus account; further, that the president be authorized and directed to make distribution of said amount of additional compensation and report his action in carrying out this resolution to the next meeting of the Board. * * *" Before the regular monthly meeting of the directors held January 27, 1942, Henderson had been advised that the treasurer's estimates of income and excess profits taxes upon which the executive committee had relied at its November meeting, and upon which the board of directors had relied in its November and December meetings, had been too high and that a misunderstanding had therefore prevailed as to the exact amount which would be left for distribution to surplus after additional compensation was paid. The minutes of the regular monthly meeting of the board of directors of petitioner for January 27, 1942, contain the following: "Mr. Henderson stated to the meeting that at the time of the fixing of additional compensation *217 to the president and other executive officers of the company during the year 1941, a misunderstanding had prevailed among the members of the executive committee as to the amount which would be debited to the capital surplus account after the additional compensation had been determined and paid; that by reason of said misunderstanding and in order to conform with the intent of the members of the executive committee in recommending the amount of additional compensation so to be paid to said executive officers, he moved that an additional sum of $25,000.00 be paid to such executive officers; the motion was seconded by Mr. H. S. Wylde and after full and complete discussion it was unanimously passed. "It was further moved by Mr. A. M. Henderson, seconded by Mr. E. C. Ernst, and unanimously carried, that the salary of the president be fixed at the rate of $25,000.00 per annum, payable either in monthly or semi-monthly installments, and that said annual rate should be effective until further action of the board, either during the fiscal year 1942 or thereafter." On March 13, 1942, petitioner paid to its officers the following additional amounts: W. J. Powell
$ 8,333.34
H. S. Wylde
6,666.66
E. J. Powell
6,666.66
W. S. Davis
3,333.34
Total
$25,000.00
*218 Before petitioner's books were closed for the year 1941, it accrued the above amounts by entry on its books as follows: Journal Entry No. 3441
Date: December 31, 1941
Account
Debit
Credit
P Factory expense
$10,833.33
N1 Office and administra-
tive expenses
14,166.67
F32 Accrued Payroll
liability
$25,000.00
TOTALS
$25,000.00
$25,000.00
See Minutes January 27, 1942. The payment of the amounts set forth above left $55,442.84 for distribution to petitioner's surplus account from its operations for the year 1941, as follows: Net profit for 1941 before
provision for Federal
taxes on income per
books
$188,439.53
Less: Provision for Fed-
eral taxes on income
114,753.57
$73,685.96
Adjustment for Federal
taxes for prior years
316.88
TOTAL
$74,002.84
Less: Dividends paid
18,560.00
Balance to surplus account from 1941
operations
$55,442.84
The Commissioner, on audit of the return, disallowed the deduction for the additional compensation which was paid to the officers on March 13, 1942, in the aggregate amount of $25,000. Each of the four officers duly filed his Federal income tax return for the calendar *219 year 1941, using the cash receipts and disbursements basis, in which returns each officer included his respectivey portion of the additional compensation set forth above in his gross income, as constructively received in the year 1941. During 1941 and prior years, petitioner operated a jobbing pressed steel business. Petitioner's presses were used three or four times a day and it was unusual for petitioner to run a single item for more than two days. The petitioner has engaged in the manufacture and sale of a large variety of items. In 1941 it manufactured approximately 3,250 different items in pressed steel products, the average run on any particular item being about 2,500 pieces. In 1940 petitioner sold to 457 customers with an average sale of $1,680. In 1941 it sold to 510 customers with an average customer sale of $2,081. It produced and manufactured various kinds of material handling equipment and general stampings. It also manufactured steel flower baskets and metal advertising displays. There are about 600 jobbing pressed steel companies in the country and in addition about 2,000 companies which make small stampings as a sideline to keep their presses busy when not in use *220 for production of their regular products. In 1941 petitioner was in competition with these other companies. W. J. Powell is 66 years old and has been president of the petitioner since its incorporation. From 1907 to 1920 he was employed by the Youngstown Pressed Steel Company as factory manager, receiving in 1920 a salary of $8,000 per year. In addition to his duties as president, in 1941 he was general manager of petitioner, in which capacity he supervised production, handled labor relations, and supervised the making of dies. He devoted about 95 per cent of his time to duties other than those of president. He scheduled production through the presses so as to produce just fast enough to keep the production in balance with assembling, welding, and painting. If, after a die is made, it falls to work it is Powell's duty to work out the problem. H. S. Wylde is 56 years old and has been vice president of the petitioner since its incorporation. From 1916 to 1920 he was sales manager of the Youngstown Pressed Steel Company, having previously been employed by Saxon Manufacturing Company as purchasing agent, and previous thereto by Hydraulic Pressed Steel Company as bookkeeper, cost accountant *221 and purchasing agent. In addition to his duties as vice president, in 1941 he was sales manager, in charge of all sales and purchases of material. The petitioner employed only two salesmen, one for material handling equipment and one for general stampings. Wylde was personally responsible for 90 to 98 per cent of petitioner's sales in 1941, Petitioner's purchases amounted to $350,198 in 1940 and $674,250 in 1941. Of petitioner's 1941 sales, 41 per cent represented orders directly related to the defense program, including Lend-Lease, orders by foreign governments, and by the United States Government and its agencies, the balance of 59 per cent not being related to the defense program. Of petitioner's 1941 sales, 14.51 per cent represented sales to new customers. E. J. Powell is 62 years old and has been secretary of petitioner since its incorporation. Previous thereto he had been employed by the Youngstown Pressed Steel Company as a mechanical engineer and estimator and has been in the steel business as an engineer and designer all of his life. In addition to his duties as secretary, he was, in 1941, petitioner's engineer, devoting about 95 per cent of his time to his duties as *222 engineer. These duties included the designing and developing of dies necessary to produce the finished product for the customers' requirements, working out problems for the customers, engineering the product for the press required for the job, determining whether the product could be produced by the petitioner's processes, and the kind and number of operations by which it could be produced, and estimating the costs of dies and stampings. W. S. David is 53 years old and has been treasurer of petitioner since 1923. He was previously employed as a cost accountant by the Youngstown Pressed Steel Company and by the General Fire Proofing Company. He handled all credit and collection matters, prepared financial statements each month for petitioner's board of directors, handled the taxes and insurance, prepared government reports, developed new forms for the accounting system, and had executive supervision of all accounting, pay rolls, and other duties of the treasurer. In 1941 petitioner did not employ any accountants other than Davis. The petitioner's officers devoted their full time to their employment and had no administrative assistants in the performance of their duties. The petitioner *223 has not borrowed any substantial sums from the banks since 1922, when it borrowed $50,000 with which to buy a building. It borrowed no money during the depression but adjusted itself by reducing overhead and reducing salaries. There was no formal agreement that petitioner would, in later years, make up these reductions in compensation, but there was an understanding to this effect. Petitioner's records of sales, profits and other matters, from 1932 to 1941, are shown in the following columns: Profit after
Profit after
compensa-
Profit before
officers'
tion of
officers'
compensa-
officers
compensation
Total
tion but
and after
and before
compensa-
before
Federal
Federal taxes
tion of
Federal taxes
taxes on
Year
Net Sales
on income
officers
on income
income
1932
$ 118,943.29
$ 25,753.32 R
$ 37,620.00
$ 63,373.32 R
$ 63,373.32 R
1933
256,306.82
28,506.58 27,900.00
606.58 606.58 1934
510,039.09
30,037.46 27,899.88
2,137.58 1,929.53 1935
475,999.40
24,014.30 27,899.88
3,085.58 R
3,085.58 R
1936
765,251.49
60,113.29 28,125.00
31,988.29 23,710.34 1937
911,764.76
55,144.32 44,500.00
10,644.32 9,545.79 1938
374,591.60
11,943.76 36,500.00
24,556.24 R
24,556.24 R
1939
582,696.78
42,315.64 36,500.00
5,815.64 5,105.85 1940
781,089.17
66,272.85 40,249.80
26,023.05 21,616.45 1941
1,462,224.65
283,339.53 94,750.00
188,589.53 73,685.96 *224 Petitioner paid its four officers the following amounts for the years 1932 to 1941, including salary and bonus: Year
W. J. Powell
H. S. Wylde
E. J. Powell
W. S. Davis
1932
$12,828.00
$10,260.00
$10,260.00
$ 4,272.00
1933
10,000.00
7,000.00
7,000.00
3,900.00
1934
9,999.96
6,999.96
6,999.96
3,900.00
1935
9,999.96
6,999.96
6,999.96
3,900.00
1936
10,000.00
7,000.00
7,000.00
4,125.00
1937
15,000.00
12,000.00
12,000.00
5,500.00
1938
12,500.00
9,500.00
9,500.00
5,000.00
1939
12,500.00
9,500.00
9,500.00
5,000.00
1940
13,783.92
10,476.05
10,476.04
5,513.79
1941
31,666.68
25,333.32
25,333.32
12,416.68
The ownership of petitioner's stock by its officers and directors and the relationship among the stockholders during the years 1941 and 1942 were as follows: Number
Stockholder
Relation to officer, if any
of Shares
W. J. Powell, President
Brother of secretary
195
Mattie Powell
Wife of president
63
Harold L. Powell
Son of president
275
Mildred Powell
Daughter of president
60
E. J. Powell, secretary
Brother of president
80
Edna Powell
Wife of secretary
100
Eleanor Powell
Daughter of secretary
100
Elizabeth Stepanion
Daughter of secretary
100
A. N. Powell
Brother of president and secretary
140
R. M. Powell
Brother of president and secretary
50
Rebecka Kay Powell
Sister of president and secretary
7
Louise Powell
Sister of president and secretary
45
Mildred Powell
Sister-in-law of president and sec'y
50
D. M. Strachan
Brother-in-law of president and sec'y
58
Florence Strachan
Niece of president and secretary
10
H. S. Wylde, vice pres.
None
140
Lillian Wylde
Wife of vice president
48
Robert Wylde
Son of vice president
30
W. S. Davis, treasurer
None
18
A. M. Henderson, director
None
75
A. J. Mayers, director
None
74
E. C. Ernst, director
None
50
Total
1,768
Unrelated stockholders
552
Total issued and outstanding
2,320
*225 The petitioner paid dividends from its incorporation through 1941 as follows: Year
Common
Preferred *
1920
0
0
1921
0
0
1922
0
$ 124.98
1923
$14,864.00
1,803.33
1924
15,333.00
2,028.00
1925
23,021.00
1,314.90
1926
24,038.00
1,314.00
1927
20,300.17
0
1928
26,004.00
217.02
1929
23,645.49
1930
18,912.00
1931
7,092.00
1932
0
1933
0
1934
0
1935
0
1936
4,728.00
1937
7,092.00
1938
0
1939
0
1940
9,456.00
1941
18,560.00
As of December 31, 1941, petitioner had issued and outstanding capital stock of $232,000, had capital surplus of $2,948, and earned surplus of $55,663.60. The first question raised by the Commissioner's determinations is the legal sufficiency of the accrual of the additional compensation paid March 13, 1942. The determination of this problem depends largely on the interpretation given to the resolution of December 23, 1941. From the wording of this resolution it is evident that the amount of additional compensation, if any was to be paid, had not yet been determined. In fact, it was not yet established that any amount could be paid and still *226 leave at least $50,000 for the surplus account. The resolution concluded by authorizing and directing the president "to make distribution of said amount of additional compensation and report his action in carrying out this resolution at the next meeting of the board." It will be noted that "said amount" refers to no particular amount and the payment of any amount is subject to the contingency of a survey being made of the amount that could be distributable to the surplus account of the company. The petitioner submits that this resolution of December 23, 1941, "authorized" the payment of at least an additional $25,000 as compensation to its officers. So far as the record goes, the president did nothing in conformity with, or in reliance on, the resolution. At the next meeting of the board of directors on January 27, 1942, attention was called to the fact that a "misunderstanding had prevailed among the members of the executive committee as to the amount which would be debited to the capital surplus account after the additional compensation had been determined and paid; that by reason of said misunderstanding and in order to conform with the intent of the members of the executive committee *227 in recommending the amount of additional compensation so to be paid to said executive officers, he moved that an additional sum of $25,000 be paid to such executive officers." The respondent states in his brief that he "is not challenging the rule that compensation may be accrued and deducted if the basis of such compensation is fixed and unchangeable on December 31 of the taxable year, even though the amount is uncertain and requires computation after the close of the year" ( . He contends, however, that "all the events" which determined the amount of the salaries and the liability of the taxpayer to pay them had not occurred prior to January 1, 1942. . We find ourselves in agreement with the respondent. The resolution of December 23, 1941, makes no mention of $25,000 or of any amount to be paid. Likewise, the amount to be set aside for surplus was not definitely fixed. It was to be "not less than" $50,000. How much more than $50,000 might be distributed to surplus is left uncertain. The fact that the directors may have discussed paying $25,000 additional *228 to its officers is not controlling. No corporate action was taken to such effect. Thus, neither the amount of compensation nor the basis of determining it was definitely fixed and it can not be said that as of January 1, 1942, that there remained only the calculation of the amount of compensation. We can not agree with the petitioner that the resolution of the board of directors of January 27, 1942, "merely confirmed the amount of additional compensation". We are of the opinion that the board then, for the first time, dealt with definite factors and then, for the first time, authorized additional compensation in a fixed or determinable amount. It follows that the additional compensation paid March 13, 1942, was not properly accrued in or for the taxable year 1941. Thus, we do not reach the second ground of disallowance stated by the respondent, i.e., the reasonableness of the salaries. Decision will be entered for the respondent. Footnotes
R. denotes loss.↩
*. No preferred stock was outstanding after 1928.↩